## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NICOLE WELKER AND JUSTIN BRINKLEY,** Individually, and as Parents and Natural Guardians on behalf of **JDWBII, a Minor** <br> 1727 Clark Avenue <br> Wellsville, Ohio 43968 <br><br> **Plaintiffs,** <br><br> v. <br><br> **THOMAS A. CARNEVALE, M.D.** <br> 807 Turnpike Avenue, Suite 260 <br> Clearfield, Pennsylvania 16830 <br><br> **CLEAR-MED OB/GYN** <br> 807 Turnpike Avenue, Suite 260 <br> Clearfield, Pennsylvania 16830 <br><br> **CLEARFIELD HOSPITAL** <br> 809 Turnpike Avenue <br> Clearfield, Pennsylvania 16830 <br><br> **PENN HIGHLANDS HEALTHCARE** <br> 204 Hospital Avenue <br> DuBois, Pennsylvania 15801 <br><br> **PENN HIGHLANDS CLEARFIELD** <br> 809 Turnpike Avenue <br> Clearfield, Pennsylvania 16830 <br><br> **Defendants.** | **CIVIL ACTION** <br> **NO.** 3:14-cv-149 <br><br><br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

1.      Federal jurisdiction in this action is predicated upon diversity of citizenship under statutory authority of 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00.

2.      Venue is in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because (1) some or all defendants are residents of this judicial district and/or (2) the acts and

omissions that form the subject matter of this action occurred in this judicial district.

3.     For purposes of diversity under 28 U.S.C. § 1332, all defendants are citizens of the Commonwealth of Pennsylvania and all plaintiffs are citizens of the State of Ohio.

4.     Plaintiffs, Nicole Welker and Justin Brinkley, bring this action individually and as the parents and natural guardians on behalf of their minor son, JDWBII.[1]  Nicole Welker and Justin Brinkley are adult citizens of the State of Ohio, currently residing at 1727 Clark Avenue, Wellsville, Ohio 43968.

5.     Minor-Plaintiff, JDWBII (hereinafter "minor-son JDWBII"), is a citizen of the State of Ohio and resides therein with his parents at 1727 Clark Avenue, Wellsville, Ohio 43968.

6.     Defendant, Thomas A. Carnevale, M.D. (hereinafter "Dr. Carnevale"), an adult citizen of the Commonwealth of Pennsylvania, was at all times material hereto, a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania, practicing within the field of obstetrics and gynecology.  Dr. Carnevale maintained a medical practice, office, and place of business at, among other sites, 807 Turnpike Avenue, Suite 260, Clearfield, Pennsylvania 16830. Plaintiffs are asserting a professional liability claim against this defendant.  A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.3 regarding this defendant is attached hereto as Exhibit "A."

7.     Defendant, Clear-Med OB/GYN, was at all times material hereto, a corporation or other jural entity organized according to and existing under the laws of the Commonwealth of Pennsylvania, with a business address at 807 Turnpike Avenue, Suite 260, Clearfield, Pennsylvania 16830.  Plaintiffs are asserting a professional liability claim against this defendant

---

[1] Pursuant to LCvR 5.2D(2), Plaintiffs have identified Minor-Plaintiff by child's initials only and his identity will be readily identifiable and produced in Discovery.

2

for the negligence of its agents, servants and/or employees. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.3 regarding this defendant is attached hereto as Exhibit "B."

8.      Defendant, Clearfield Hospital, was at all times material hereto, a professional healthcare facility and corporation or other jural entity, organized and operating under the laws of the Commonwealth of Pennsylvania, with a business address and an address at which it was regularly conducting business at 809 Turnpike Avenue, Clearfield, PA 16830. Plaintiffs are asserting a professional liability claim against this defendant for the negligence of its agents, servants and/or employees. Plaintiffs are also asserting a direct claim for corporate negligence against Clearfield Hospital. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.3 regarding this defendant is attached hereto as Exhibit "C."

9.      Defendant, Penn Highlands Healthcare, was at all times material hereto, a professional healthcare facility and corporation or other jural entity, organized and operating under the laws of the Commonwealth of Pennsylvania, with a business address and an address at which it was regularly conducting business at 809 Turnpike Avenue, Clearfield, PA 16830, and which operates, owns, maintains, and/or controls Clearfield Hospital. Plaintiffs are asserting a professional liability claim against this defendant for the negligence of its agents, servants and/or employees. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.3 regarding this defendant is attached hereto as Exhibit "D."

10.      Defendant, Penn Highlands Clearfield, was at all times material hereto, a professional healthcare facility and corporation or other jural entity, organized and operating under the laws of the Commonwealth of Pennsylvania, with a business address and an address at

3

which it was regularly conducting business at 809 Turnpike Avenue, Clearfield, PA 16830, and which operates, owns, maintains, and/or controls Clearfield Hospital. Plaintiffs are asserting a professional liability claim against this defendant for the negligence of its agents, servants and/or employees. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.3 regarding this defendant is attached hereto as Exhibit "E."

11.     At all times material hereto, Dr. Carnevale was an actual, apparent and/or ostensible agent, servant, and/or employee of Clear-Med OB/GYN and was acting within the scope of his professional duties for Clear-Med OB/GYN while providing medical care and treatment to Nicole Welker and minor-son JDWBII at Clear-Med OB/GYN and Clearfield Hospital.

12.     At all times material hereto, Dr. Carnevale was an actual, apparent and/or ostensible agent, servant, and/or employee of Clearfield Hospital, Penn Highlands Healthcare, and Penn Highlands Clearfield and was acting within the scope of his professional duties for Clearfield Hospital, Penn Highlands Healthcare, and Penn Highlands Clearfield while providing medical care and treatment to Nicole Welker and minor-son JDWBII at Clearfield Hospital.

13.     At all times material hereto, Defendants engaged agents, servants, and/or employees, including Brenda Duez, RN, Kristin Wisor, RN, Lisa Rorabaugh, RN, Barbara Westover, RN, and any other nurses and healthcare personnel who provided care to Nicole Welker in Labor & Delivery on July 19, 2012 and whose identities are known to Defendants only in the absence of discovery, all of whom were acting within the scope of their professional duties for Clearfield Hospital, Penn Highlands Healthcare, and Penn Highlands Clearfield while providing medical care and treatment to Nicole Welker and minor-son JDWBII at Clearfield

4

Hospital. Accordingly, Clearfield Hospital, Penn Highlands Healthcare, and Penn Highlands Clearfield are liable for the negligent acts and omissions of these agents, servants, and/or employees in the care of Nicole Welker and minor-son JDWBII.

14.   At all times material hereto, Defendants were acting by and through their actual, apparent, or ostensible agents, servants and/or employees and some or all of these defendants may have been agents, servants, and/or employees of other individuals or entities and/or each other.

## OPERATIVE FACTS

15.   On or about October of 2011, Nicole Welker conceived her first pregnancy with her partner, Justin Brinkley, following which Nicole Welker was given an estimated due date ("EDD") of July 14, 2012.

16.   Nicole Welker received prenatal care at the Adagio Health System in Erie, Pennsylvania before relocating to the Clearfield, Pennsylvania region where she received the remainder of her prenatal care with Dr. Carnevale and Clear-Med OB/GYN starting on or about July 10, 2012.

17.   Nicole Welker had an uneventful prenatal course with all prenatal studies and parameters indicative of a healthy fetus.

18.   On July 19, 2012, at about 12:30 p.m., Nicole Welker presented to Clearfield Hospital with contractions. She was put on a fetal monitor and evaluated by Dr. Carnevale. She was found to be contracting every 2-3 minutes with a cervix that was 3cm dilated and 80% effaced. Shortly after 1:00 p.m. Dr. Carnevale discharged Nicole Welker to home with instructions to return with stronger contractions or rupture of membranes.

19.     On July 19, 2012, at about 4:31 p.m., Nicole Welker presented back to Clearfield Hospital with increasing pain and contractions every 2-3 minutes, was 5-6 cm dilated, and was admitted to Labor & Delivery under the care of Dr. Carnevale.

20.     On July 19, 2012, at 6:30 p.m., Nicole Welker was 8 cm dilated and underwent artificial rupture of membranes that revealed thick meconium-stained fluid.

21.     On July 19, 2012, Nicole Welker was often in tachysystole.

22.     On July 19, 2012, despite being in tachysystole and adequately progressing in labor, Nicole Welker was started on Pitocin augmentation at 6mu/min.

23.     On July 19, 2012, at 7:11 p.m., Nicole Welker was fully dilated and started to push in the second stage of labor.

24.     On July 19, 2012, while in the second stage of labor, Nicole Welker was in tachysystole.

25.     On July 19, 2012, while in the second stage of labor and in tachysystole, Nicole Welker's labor was augmented with Pitocin.

26.     On July 19, 2012, Nicole Welker's fetal monitor tracing revealed increasingly concerning decelerations and findings indicative of progressive fetal hypoxia, hypoxemia, and acidosis for which intervention, including intrauterine resuscitation and emergent delivery was needed, but was not done.

27.     On July 19, 2012, at 8:31 p.m., Nicole Welker underwent spontaneous vaginal delivery by Dr. Carnevale of minor-son JDWBII.

28.     On July 19, 2012, at birth, minor-son JDWBII was a morphologically normal appearing male weighing 3,133 grams (6 pounds, 14 ounces), but he was flaccid and severely

depressed for which he required immediate advanced neonatal resuscitation and intubation at 5 minutes of life.

29.     On July 19, 2012, minor-son JDWBII had apgar scores of 1, 2, 3, 4, 4, 4, and 5 at 1, 5, 10, 15, 20, 25, and 30 minutes respectively and had severe metabolic acidosis on cord pH, all of which were indicative of acute hypoxia in labor.

30.     On July 19, 2012, Plaintiff, Nicole Welker, witnessed Defendants' negligent management of her labor and delivery, the birth and resuscitation of her hypoxemic and acidotic son, and her son's resultant injuries.

31.     On or about July 20, 2012, within hours of birth, minor-son JDWBII was transported to Pittsburgh Children's Hospital ("CHP") by Dubois Regional Medical Center transport, where he was treated with therapeutic cooling and diagnosed with severe hypoxic ischemic encephalopathy.

32.     While admitted to CHP beginning on July 20, 2013, Minor-son JDWBII's diagnoses included severe hypoxic ischemic encephalopathy of newborn, seizures, respiratory distress requiring intubation, and coagulopathy; and, subsequent to his discharge to home, he was diagnosed with cerebral palsy.

33.     As a direct and proximate result of Defendants' negligence in the management of Nicole Welker's labor and delivery, minor-son JDWBII was caused to suffer a severe hypoxic brain injury that resulted in, among other things, cerebral palsy and catastrophic disabilities.

34.     Minor-son JDWBII's injuries were a direct and proximate result of the negligent acts or omissions of Defendants, their agents, servants, and/or employees, and were not caused or contributed thereto by any negligence on the part of Plaintiffs.

7

35.   As a direct and proximate result of the negligent treatment provided by Defendants and their agents, servants and/or employees to Nicole Welker and her unborn fetus on July 19, 2012, minor-son JDWBII sustained the following injuries:

a)   Intrauterine asphyxia with hypoxia and hypoxemia;

b)   Metabolic acidosis;

c)   Hypoxic-ischemic injury;

d)   Depression at birth;

e)   Respiratory distress;

f)   Intubation;

g)   Advanced neonatal resuscitation;

h)   Seizures;

i)   Severe hypoxic ischemic encephalopathy;

j)   Permanent brain damage;

k)   Cerebral palsy;

l)   Permanent physical damage including muscle weakness and increased tone;

m)   Developmental delays;

n)   Feeding disorder;

o)   Hospitalizations;

p)   Past pain and suffering;

q)   Future pain and suffering;

r)   Past medical expenses;

s)   Future medical expenses;

t)   Loss of future earnings, maintenance, and other similar losses;

u)   Pecuniary losses;

v)   Loss of services and/or support;

w)   Future mental anguish;

x)   Embarrassment;

y)   Humiliation;

z)   Disfigurement;

aa)  Loss of life's pleasures.

36.   As a direct and proximate result of the negligent treatment provided by Defendants, their agents, servants and/or employees as set forth in the paragraphs above, minor-son JDWBII's parents, Nicole Welker and Justin Brinkley, claim the full measure of damages allowable for themselves and on behalf of their minor son, JDWBII, under the laws of the Commonwealth of Pennsylvania.

### COUNT I - NEGLIGENCE
### PLAINTIFFS V. THOMAS A. CARNEVALE, M.D., CLEAR-MED OB/GYN, CLEARFIELD HOSPITAL, PENN HIGHLANDS HEALTHCARE, AND PENN HIGHLANDS CLEARFIELD

37.   The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

38.   The negligence of Dr. Carnevale and through him, Clear-Med OB/GYN, Clearfield Hospital, Penn Highlands Healthcare, and Penn Highlands Clearfield in his medical management, care, and treatment of Nicole Welker and her fetus, as set forth in the predicate facts stated above, includes one or more of the following:

a)   Failure to appropriately supervise Nicole Welker's labor;

9

b)      Failure to adequately evaluate and monitor Nicole Welker's fetus under the circumstances of her labor;

c)      Failure to recognize that the thick meconium found on artificial rupture of Nicole Welker's membranes was indicative of underlying fetal hypoxia and/or fetal stress;

d)      Failure to appropriately oversee the nurses and other medical staff on Labor & Delivery caring for Nicole Welker;

e)      Failure to appropriately monitor Nicole Welker for fetal well-being in labor;

f)      Failure to properly interpret Nicole Welker's fetal heart rate tracing;

g)      Failure to timely recognize and treat a nonreassuring fetal heart rate tracing;

h)      Failure to recognize and/or appropriately respond to Nicole Welker's need for intrauterine fetal resuscitation;

i)      Failure to provide needed intrauterine resuscitation;

j)      Failure to recognize and/or appropriately respond to Nicole Welker's tachysystole;

k)      Augmenting Nicole Welker's labor with Pitocin;

l)      Augmenting Nicole Welker's labor with inappropriate Pitocin dosing;

m)     Augmenting Nicole Welker's labor with Pitocin when in tachysystole;

n)      Augmenting Nicole Welker's labor with Pitocin absent an indication for augmentation of labor;

o)      Augmenting Nicole Welker's labor with Pitocin when contraindicated;

p)      Causing Nicole Welker's fetus to sustain increasing hypoxia by augmenting her labor with Pitocin;

q)      Failure to stop Pitocin and/or utilize tocolytics to reduce the frequency of Nicole Welker's contractions in the second stage of labor;

r)      Failure to stop Nicole Welker from pushing in the face of tachysystole and a nonreassuring fetal heart tracing indicative of increasing hypoxia, hypoxemia, and/or acidosis;

s)      Failure to timely deliver Nicole Welker;

t)      Failure to perform emergent operative delivery;

u)      Failure to timely deliver Nicole Welker via operative vaginal delivery in response to her fetal heart rate tracing;

v)      Failure to timely deliver Nicole Welker via cesarean section in response to her fetal heart rate tracing;

w)      Failure to take the necessary steps to prevent Nicole Welker's fetus from sustaining severe hypoxic brain damage.

39.     The negligence of Dr. Carnevale and through him, Clear-Med OB/GYN, Clearfield Hospital, Penn Highlands Healthcare, and Penn Highlands Clearfield as set forth above, was a substantial factor causing the injuries and damages suffered by minor-son JDWBII.

### COUNT II - NEGLIGENCE
### PLAINTIFFS v. CLEARFIELD HOSPITAL, PENN HIGHLAND HEALTHCARE, AND PENN HIGHLANDS CLEARFIELD

40.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

41.     The negligent acts and omissions of Clearfield Hospital, acting through its authorized agents, servants and/or employees, including Brenda Duez, RN, Kristin Wisor, RN, Lisa Rorabaugh, RN, Barbara Westover, RN, and any other nurses and healthcare personnel who

provided care to Nicole Welker in Labor & Delivery on July 19, 2012 and whose identities are known to Defendants only in the absence of discovery, includes one or more of the following:

    a)     Failure to appropriately observe Nicole Welker's labor;

    b)     Failure to adequately evaluate and monitor Nicole Welker's fetus under the circumstances of her labor;

    c)     Failure to recognize that the thick meconium found on artificial rupture of Nicole Welker's membranes was indicative of underlying fetal hypoxia and/or fetal stress;

    d)     Failure to appropriately monitor Nicole Welker for fetal well-being in labor;

    e)     Failure to properly interpret Nicole Welker's fetal heart rate tracing;

    f)     Failure to timely recognize and treat a nonreassuring fetal heart rate tracing;

    g)     Failure to recognize and/or appropriately respond to Nicole Welker's need for intrauterine fetal resuscitation;

    h)     Failure to provide needed intrauterine resuscitation;

    i)     Failure to recognize and/or appropriately respond to Nicole Welker's tachysystole;

    j)     Augmenting Nicole Welker's labor with Pitocin;

    k)     Augmenting Nicole Welker's labor with inappropriate Pitocin dosing;

    l)     Augmenting Nicole Welker's labor with Pitocin when in tachysystole;

    m)     Augmenting Nicole Welker's labor with Pitocin absent an indication for augmentation of labor;

    n)     Augmenting Nicole Welker's labor with Pitocin when contraindicated;

o)      Causing Nicole Welker's fetus to sustain increasing hypoxia by augmenting her labor with Pitocin;

p)      Failure to stop Pitocin and/or utilize tocolytics to reduce the frequency of Nicole Welker's contractions in the second stage of labor;

q)      Failure to stop Nicole Welker from pushing in the face of tachysystole and a non-reassuring fetal heart tracing indicative of increasing hypoxia, hypoxemia, and/or acidosis;

r)      Failure to institute the chain of command when Dr. Carnevale failed to recognize or timely respond to Nicole Welker's nonreassuring fetal heart rate tracing;

s)      Failure to appropriately communicate a concern with Nicole Welker's fetal heart rate tracing to Dr. Carnevale;

t)      Failure to take the necessary steps to prevent Nicole Welker's fetus from sustaining severe hypoxic brain damage.

42.      The negligence of Clearfield Hospital, acting through its authorized agents, servants and/or employees as set forth above, was a substantial factor causing the injuries and damages suffered by minor-son JDWBII.

## COUNT III – CORPORATE NEGLIGENCE
## PLAINTIFFS v. CLEARFIELD HOSPITAL

43.      The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

44.      This is a claim of corporate negligence for the breaches of Clearfield Hospital's non-delegable duties owed to Plaintiffs.

45.      The corporate (direct) negligence of Clearfield Hospital arising out of the evaluation, care, and treatment rendered to Nicole Welker and minor-son JDWBII on July 19,

2012 and which Clearfield Hospital had actual and/or constructive knowledge of and which Clearfield Hospital should have known, recognized, and ameliorated, as fully set forth in the operative facts above, consisted of one or more of the following:

a) Failing to select and retain physicians competent in the diagnosis, recognition and/or management of uterine tachysytole as occurred with Nicole Welker;

b) Failing to select and retain physicians competent in the performance of urgent or emergent operative vaginal delivery and/or cesarean section as was needed by Nicole Welker;

c) Failing to oversee physicians and staff who practice obstetrics in the Department of Labor and Delivery in a manner sufficient to avoid the injuries sustained by minor-son JDWBII;

d) Failing to formulate, adopt and enforce adequate rules and policies to ensure that appropriate intrauterine resuscitation was performed on Nicole Welker so as to avoid the injuries sustained by minor-son JDWBII;

e) Failing to formulate, adopt and enforce adequate rules and policies to ensure that Pitocin augmentation is not utilized in the face of tachysystole;

f) Failing to formulate, adopt and enforce adequate rules and policies to ensure that tachysystole is appropriately recognized and managed;

g) Failing to formulate, adopt and enforce adequate rules and policies to ensure that Pitocin augmentation is only used when indicated and not used when contraindicated;

h) Failing to formulate, adopt and enforce adequate rules and policies to ensure proper dosing of Pitocin in the augmentation of labor;

i) Failing to formulate, adopt and enforce adequate rules and policies to ensure that emergent operative vaginal delivery can be performed in a timely manner;

j) Failing to formulate, adopt and enforce adequate rules and policies to ensure that emergent cesarean section can be performed in a timely manner.

46. Defendant Clearfield Hospital had failures, defects, incompetencies and/or procedural defects as set forth herein that increased the risk of harm and/or was a substantial contributing factor causing the injuries and damages suffered by Plaintiffs.

## COUNT IV - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## PLAINTIFF, NICOLE WELKER, INDIVIDUALLY, v. ALL DEFENDANTS

47. The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

48. At all material times Plaintiff, Nicole Welker, was present to contemporaneously witness the negligent and careless treatment rendered by Defendants and the resulting catastrophic injuries to her infant son, JDWBII.

49. As a result of the negligent acts and omissions of Defendants as set forth in this Complaint, Plaintiff, Nicole Welker, suffered and will continue to suffer physical manifestations of severe emotional distress, including anxiety, depression, nausea, insomnia and other symptoms for which, under the law, she is entitled to recover damages in her own right.

**WHEREFORE**, Plaintiffs, Nicole Welker and Justin Brinkley, as Parents and Natural Guardians of minor-son JDWBII, and in their own right, respectfully demand judgment against

15

Defendants, jointly, severally, or in the alternative, in a sum in excess of the local arbitration

limits, exclusive of interest, costs, and damages for prejudgment delay.

Respectfully submitted,

**KLINE & SPECTER**
*A Professional Corporation*

By: _____

SHANIN SPECTER, ESQUIRE
Identification No: PA 40928
Shanin.Specter@KlineSpecter.com
Attorney for Plaintiffs
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000
(215) 735-1005 (fax)

Dated: 7/15/14

16

# EXHIBIT "A"

## **CERTIFICATE OF MERIT AS TO THOMAS A. CARNEVALE, M.D.**

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

■    An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐    An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐    the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of

the claim against this defendant.

Date: ___7/15/14___                                   _____

                                                              MARK S. POLIN, ESQUIRE

# EXHIBIT "B"

## CERTIFICATE OF MERIT AS TO CLEAR-MED OB/GYN

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

☐   An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant (corporate negligence) in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

■   An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

■   the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the

claim against this defendant.

Date: ___7/10/14___

_____

MARK S. POLIN, ESQUIRE

# EXHIBIT "C"

## CERTIFICATE OF MERIT AS TO CLEARFIELD HOSPITAL

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

■ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant (corporate negligence) in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

■ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

■ the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the

claim against this defendant.

Date: _7/15/14_

_____

MARK S. POLIN, ESQUIRE

2

# EXHIBIT "D"

### CERTIFICATE OF MERIT AS TO PENN HIGHLANDS HEALTHCARE

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

☐   An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant (corporate negligence) in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

■   An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

■   the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date: _2/15/14_

_____

MARK S. POLIN, ESQUIRE

# EXHIBIT "E"

## CERTIFICATE OF MERIT AS TO PENN HIGHLANDS CLEARFIELD

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

☐     An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant (corporate negligence) in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

    OR

■     An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

    OR

■     the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

    OR

☐   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date: _7/0/14_                         _____
                                        MARK S. POLIN, ESQUIRE