IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE WELKER and JUSTIN BRINKLEY, individually, and CHARLES B. HADAD, ESQUIRE, as Guardian Ad Litem on behalf of JDWBII, a minor, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS A. CARNEVALE, M.D. and CLEARFIELD HOSPITAL, <br><br> Defendants. | CIVIL ACTION NO. 3:14-CV-149 <br><br> JUDGE KIM R. GIBSON |

## MEMORANDUM OPINION

I.  Introduction

Pending before the Court are Plaintiffs' Motion *in Limine* to Preclude Justin Brinkley's Prior Legal History (ECF No. 71), Motion *in Limine* to Preclude Litigation Analytics from Presenting JDWBII's Future Life Care Costs Discounted to Present Value (ECF No. 73), and Motion *in Limine* to Preclude Existence/Availability of Health Insurance and Opinions/Calculations Based on the Affordable Care Act (ECF No. 75). For the reasons that follow, Plaintiffs' Motion regarding Justin Brinkley's legal history is **GRANTED**, Plaintiffs' motion regarding discounting future life care costs to present value is **GRANTED**, and Plaintiffs' motion regarding the Affordable Care Act is **GRANTED**.

## II. Background

This is a diversity action alleging medical malpractice and negligence. Nicole Welker presented to Clearfield Hospital on July 19, 2012, in active labor. She was treated by Dr. Thomas Carnevale, the attending obstetrician. Plaintiffs allege that Defendants Dr. Carnevale and Clearfield Hospital failed to provide appropriate medical care, including that they improperly administered the drug Pitocin to Welker while she was in labor, resulting in serious and permanent neurological disabilities to her son, JDWBII. Defendants deny that their actions were negligent or constituted malpractice. Trial is scheduled to begin on January 17, 2017. Plaintiffs have filed three motions *in Limine*, which the Court will discuss in turn.

## III. Discussion

### a. Justin Brinkley's Prior Legal History

Plaintiffs first request the Court exclude any reference to Plaintiff Justin Brinkley's prior legal history relating to a "legal matter" around the time of his son's birth. (ECF Nos. 71 & 77.) On July 16, 2012, Dr. Carnevale recommended to Nicole Welker that they induce labor on July 18, 2012. (ECF No. 77 at 2.) Welker asked to delay the inducement of labor until the onset of natural labor or she reached 41-42 weeks gestation, to which Dr. Carnevale agreed. (*Id.*) Welker declined inducement on July 18, 2012 because Brinkley, her boyfriend and the baby's father, had a court hearing out of town in Erie, Pennsylvania on July 19, 2012. (*Id.*) The hearing was a preliminary hearing for an arrest on charges for possessing stolen property, possession of marijuana and drug paraphernalia, and a

firearm charge.[1] (*Id.* at 3.) Despite postponing inducement, Welker ended up going into labor and giving birth on July 19, 2012, while Brinkley was in Erie. (*Id.* at 2) The testimony of Dr. Carnevale and Brinkley, as well as the reports of two defense experts make reference to Brinkley's legal matter. (*Id.* at 2-4.) Plaintiffs request the Court preclude any such reference at trial on the grounds that Brinkley's criminal hearing is irrelevant to the claims in this case and would be unfairly prejudicial. Defendants did not file a brief in opposition with respect to this motion.

Under the Federal Rules of Evidence, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. A court may, however, exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. FED. R. EVID. 403. The Court agrees that Brinkley's legal matter in Erie is not relevant to the claims in this case. Where exactly Brinkley needed to be on July 19, 2012 could not possibly have any relevance to whether Defendants committed malpractice, a fact Defendants evidently do not contest. In fact, Dr. Carnevale testified in his deposition that the legal matter had nothing to do with the medical outcome. (ECF No. 71-4 at 3.) The nature of the legal matter would likewise be prejudicial against Plaintiffs. Accordingly, the Court will grant Plaintiffs' motion and preclude any reference to Brinkley's legal history.

---

[1] The charges ultimately resulted in probation but no conviction and were eventually expunged from Brinkley's record. (*Id.* at 3.)

3

### b. Future Life Care Costs Discounted to Present Value

Plaintiffs request the Court preclude one of Defendants' experts from presenting to the jury JDWBII's future life care costs discounted to present value. (ECF Nos. 73 & 78.) Plaintiffs argue that Pennsylvania law provides that awards for future medical expenses in medical malpractice cases should not be discounted to present value. Defendants declined to file a brief in opposition with respect to this motion.

Plaintiffs' reading of Pennsylvania law appears to be correct. *See* 40 P.S. § 1303.509(b) (outlining future damages in medical malpractice cases); *see also Nicholson-Upsey ex rel. Nicholson v. Tuoey*, No. 4525 NOV.TERM 2009, 2013 WL 8596353, at *21 (Pa. Com. Pl. May 7, 2013) (where the jury awarded damages for future medical expenses as a total sum and the court subsequently discounted the award to present value for the purpose of determining attorney's fees only). Accordingly, the Court will grant Plaintiffs' motion and preclude Defendants' expert from presenting JDWBII's life care costs to the jury discounted to present value.

### c. Opinions and Calculations Based Upon the Affordable Care Act

Lastly, Plaintiffs ask the Court to preclude Defendants and their experts from presenting opinions and calculations based upon the Affordable Care Act ("ACA") with respect to damages for future life care costs. (ECF Nos. 75 & 79.) Plaintiffs, relying on several decisions from Federal District Courts and the Pennsylvania Superior Court, argue that coverage under the ACA is barred by the collateral source rule, as recognized under Pennsylvania law. Defendants argue in opposition that the collateral source rule is inapplicable to the ACA, that the decisions cited by Plaintiffs do not involve in depth

4

reasoning and are not binding on this Court, and Pennsylvania Supreme Court precedent indicates the Commonwealth's highest court would hold that coverage under the ACA is not barred by the collateral source rule. (ECF No. 84.)

"[T]he collateral source rule was intended to avoid precluding a claimant from obtaining redress for his or her injury merely because coverage for the injury was provided by some collateral source, e.g. insurance." *Beachwood Flying Service, Inc. v. Al Hamilton Contracting Corp.*, 476 A.2d 350, 352 (Pa. 1984). While the Pennsylvania Supreme Court has not weighed in on the issue, several other courts have held that calculations relating to the ACA are barred by the collateral source rule under Pennsylvania law. *See Bernheisel v. Mikaya*, No. 3:13-CV-01496, 2016 WL 4211897, at *4 (M.D. Pa. Aug. 9, 2016); *Cordes v. United States*, No. 2:13CV547, 2015 WL 10986360 (W.D. Pa. Nov. 20, 2015); *Deeds v. Univ. of Pennsylvania Med. Ctr.*, 110 A.3d 1009, 1013, reargument denied (Apr. 7, 2015), appeal dismissed sub nom. *Deeds ex rel. Renzulli v. Univ. of Pennsylvania Med. Ctr.*, 128 A.3d 764 (Pa. Super. Ct. 2015).

Defendants are correct that none of these cases are binding on this Court, nor is the issue discussed in great detail in any of the opinions. Nevertheless, the decisions are still instructive and the Court is not persuaded that they are wrongly decided. Defendants' arguments to the contrary are ultimately not compelling. For example, Defendants argue that the ACA is not, itself, health insurance. (ECF No. 84 at 2-3.) That is of course true in the literal sense. Nevertheless, while the ACA is not health insurance, it would still seem to be the case that health insurance governed by, and obtained under the ACA, is still health insurance.

5

Defendants predict that the Pennsylvania Supreme Court would hold differently than the Superior Court and the Federal District Courts based on its prior holding in *Moorhead v. Crozer Chester Med. Ctr.*, 765 A2d 786 (Pa. 2001). (*See* ECF No. 84 at 7-8.) However, Defendants appear to be misreading or misapplying the holding in *Moorhead*. In *Moorhead*, it was determined that the fair and reasonable value of the medical services received by the plaintiff was $108,668.31, but the Medicare allowance for those services was only $12,167.40. *Moorhead*, 765 A2d, at 787-88. Medicare and the plaintiff's health insurance paid the $12,167.40 to the healthcare provider and the plaintiff received the services at no personal cost. (*Id.*) The Pennsylvania Supreme Court reasoned that the collateral source rule did not serve to allow the plaintiff to recover the full $108,668.31 for the value of the services since that amount was not paid by anyone. However, the court went on to say "[c]learly, Appellant is entitled to recover $12,167.40, the amount which was paid on her behalf by Medicare and Blue Cross, the collateral sources." (*Id.* at 791.) Therefore, even under the reasoning in *Moorhead*, it does not follow that Plaintiffs' recovery should be limited to the amount they will have to pay for "Government-controlled premiums and out-of-pocket limitations" under the ACA, as Defendants assert. (*See* ECF No. 84 at 8.) Rather, the amount paid by a health insurance company (offering Plaintiffs health insurance through the ACA) to healthcare providers would seemingly be covered by the collateral source rule and recoverable by Plaintiffs. In sum, Defendants arguments fail to convince this Court that *Bernheisel*, *Cordes*, and *Deeds* were wrongly

decided and will adopt their reasoning.[2] Accordingly, the Court will grant Plaintiffs' motion.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Plaintiffs' motions *in Limine*.

An appropriate order follows.

---

[2] The Court further notes that the decisions in *Bernheisel*, *Cordes*, and *Deeds* were issued prior to recent events which cast the long-term existence of the ACA into doubt. The case for excluding calculations based on the ACA is only stronger now.

7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE WELKER and JUSTIN BRINKLEY, individually, and CHARLES B. HADAD, ESQUIRE, as Guardian Ad Litem on behalf of JDWBII, a minor, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS A. CARNEVALE, M.D. and CLEARFIELD HOSPITAL, <br><br> Defendants. | CIVIL ACTION NO. 3:14-CV-149 <br><br> JUDGE KIM R. GIBSON |

## ORDER

**AND NOW**, this 13th day of January, 2017, upon consideration of Plaintiffs' Motion *in Limine* to Preclude Justin Brinkley's Prior Legal History (ECF No. 71), Motion *in Limine* to Preclude Litigation Analytics from Presenting JDWBII's Future Life Care Costs Discounted to Present Value (ECF No. 73), and Motion *in Limine* to Preclude Existence/Availability of Health Insurance and Opinions/Calculations Based on the Affordable Care Act (ECF No. 75), and in accordance with the attached memorandum opinion, **IT IS HEREBY ORDERED** that the motions are **GRANTED**.

BY THE COURT:

/s/ Kim R. Gibson

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**